UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: <br><br> Robert John Eyde, <br><br> Debtor. | Case No.: 21-17330-ABA <br><br> Chapter: 13 <br><br> Judge: Andrew B. Altenburg, Jr. <br><br> Hearing Date: February 8, 2022 |

**MEMORANDUM DECISION**

### I.   INTRODUCTION

The debtor, Robert John Eyde, filed a Motion to Vacate Dismissal, Doc. No. 54, (the "Motion") that was opposed by the chapter 13 trustee and Rushmore Loan Management Services, LLC. As Mr. Eyde admits that his goal in filing is solely to object to the standing of his mortgagee and/or to negotiate a loan modification with his creditor, the court finds that the bankruptcy filing was an abuse of the bankruptcy process, and it will deny the Motion.

### II.   JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(b)(2)(A) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 1322(b)(1) and 1325(b)(1)(B). Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

### III.  BACKGROUND

Mr. Eyde filed his most recent chapter 13 bankruptcy case ("Current Case") *pro se* on September 17, 2021. Since then, Mr. Eyde has made no payments to the trustee nor has he filed any pleadings to participate in the court's loss mitigation program. The loss mitigation program is designed to function as a forum for debtors and lenders to reach a consensual resolution through loan modifications or refinances in their cases when a debtor's residential property is at risk of foreclosure. The program is not mandatory. The time to utilize the program has expired. Eventually, Mr. Eyde's case was dismissed by order dated January 5, 2022 for failure to attend the section 341(a) meeting of creditors, make required pre-confirmation payments to the chapter 13 trustee, and resolve objections to confirmation. Doc. No. 51.

The trustee in her objection to the Motion attached a transcript of what took place at the section 341(a) hearing held on December 23, 2021. Doc. No. 57. It shows that Mr. Eyde declined to answer any questions and stated that he did not owe money to any creditors therefore he would not be making a plan payment. When the trustee's attorney attempted to ask about Mr. Eyde's schedules, Mr. Eyde replied:

> I just want, I just want to be, I just want to be on record because, you know, I think this is just putting the cart before the horse, sir. I'm just asking for a continuance [of the 341(a) hearing], because I, because I don't feel that I owe anything here, and I shouldn't make any payments, as of now. I just reviewed, went over a lot, a lot of forensics and stuff, and things, and I just don't like what I see. So I just, that's what I'm asking for right now. I mean, there is no use of continuing this because it's going to be, it's going to be dismissed cause I'm not going to make a payment.

Doc. No. 57-1, pp. 2-3, ll. 72-78.

The trustee's attorney explained that he could not continue the hearing as it already had been continued 10 days, and the trustee had reviewed the case and recommended it for dismissal. *Id.*, p. 3, ll. 107-109.

Earlier in this Current Case, Mr. Eyde tried to knock out any claim of Wells Fargo by filing a proof of claim on its behalf and then objecting to its standing to assert the claim based on a "forensic audit" he obtained purportedly showing that Wells Fargo did not own the note.[1] *See* Current Case, Claim No. 3-1; Doc. No. 25. In an order adjourning the motion for failure to properly serve Wells Fargo, the court also pointed out Mr. Eyde's lack of authority to file a claim on behalf of a creditor prior to the claims bar date, *see* Fed. R. Bankr. P. 3004, and his faulty procedure in filing a motion for injunctive or declaratory relief when an adversary proceeding is required. Fed. R. Bankr. P. 7001(7); Current Case, Doc. No. 41. The continued hearing was not held since, prior to that date, the case was dismissed.

---

[1] This despite disclosing the claim of Wells Fargo on his Schedule D without claiming it disputed. *See* Doc. No. 1, p. 24.

Yet at the 341(a) hearing, Mr. Eyde appeared to believe that he could still prosecute his motion despite the trustee's warning about dismissal, replying to the trustee's attorney's statement that he had other questions, that "Yes, I'm, I'm asking for a continuance, okay sir, and if I don't get a continuance, that's fine, because I'm going to have to pursue this in another way. I just do not owe Wells Fargo any money, and they are not here today, and they have not shown that they have Proof of Claim (inaudible) so it's just a, it's a matter of going before the Judge on January 19th, Proof of Standing. Okay, and that's, that's, that's all on the record right now." *Id.*, p. 4, ll. 124-129.

That this is all Mr. Eyde cares about is evident from how he has paid little attention to the duties of a debtor. For the plan payments, start date of payments, and the number of months of payments on his proposed chapter 13 plan, he wrote in "TBD." Current Case, Doc. No. 29, p. 2. The remainder of the plan was essentially blank, i.e., it indicated no payments to creditors.

Nevertheless, the plan identified the sale of Mr. Eyde's residence located at 50 Asbury Road, Ocean City, by September 15, 2022 as the source of plan payments. *Id.* But he also stated there that he was "asking for a forebearance [sic] on payments due to the structure of the home. . . ." *id.*, and on his Schedule J, Mr. Eyde indicated that he was pursuing a loan modification. Current Case, Doc. No. 1, p. 37. The court is aware from a prior case that Mr. Eyde's residence was damaged by Superstorm Sandy. Bankr. No. 18-30557-ABA (the "Second 2018 Case"), Doc. No. 66. As a result, he was granted a forbearance by the Department of Community Affairs in New Jersey with an extension through July 1, 2022. *Id.*, ex. A. The State of New Jersey also offered him grant money to rebuild and lift his house up. *Id.* Thus, it is unclear why Mr. Eyde is asking for a forbearance he already has.

The only debt Mr. Eyde disclosed in this case was to Wells Fargo, while six creditors have filed proofs of claim. One of those, OneMain Financial Group, LLC, alleges that Mr. Eyde is a co-borrower with his wife on a 2007 Land Rover. *Id.*, Doc. No. 47-1, p. 1. Though Mr. Eyde correctly did not disclose ownership of the vehicle (it is titled in his wife's name, *see* Claim No. 4-1, p. 7), he did not disclose a debt owed to OneMain or his wife as a co-borrower.[2]

On Schedule I, Mr. Eyde disclosed $3,400 in income from his wife, checking off that he is unemployed, but on his Chapter 13 Statement of Your Current monthly Income and Calculation of Commitment Period he disclosed $2,150 in "gross wages, salary, tips, bonuses, overtime, and commissions" for himself and $4,350 for his wife. Current Case, Doc. No. 1, pp. 32, 38. Then, instead of filling in the median family income for his state and size of household, he entered "2.00," the size of his household.[3]

---

[2] He did not disclose it in his Second 2018 Case either, even though it was purchased just seven months before filing.

[3] In his Second 2018 Case, Mr. Eyde was an above median debtor, having a combined annual income with his wife of $132,400 compared to the state's median for a two-person household of $80,000. Second 2018 Case, Doc. No. 16, p. 12.

Mr. Eyde has a history of failing to comply with a debtor's duties. A chapter 13 case he filed *pro se* on July 10, 2018 was dismissed on July 31, 2018 for failure to file the Summary of Assets/Liabilities and Statistical Information, Declaration About an Individual's Schedules, Statement of Financial Affairs, Attorney Disclosure Statement, Statement of Your Current Monthly Income & Calculation of Commitment Period (122C-1), Calculation of Your Disposable Income (122C-2) (if applicable), Chapter 13 Plan and Motions, List of all Creditors, and all schedules. Bankr. No. 18-23791-ABA ("First 2018 Case"), Doc. No. 13.

Mr. Eyde filed the afore-mentioned Second 2018 Case, under chapter 13, on October 16, 2018. Despite filing with counsel this time, the case was dismissed and reinstated four times before the court denied a fifth Motion to Vacate Dismissal. It was first dismissed on November 15, 2018 for Mr. Eyde's failure to attend the section 341(a) hearing, make required preconfirmation payments to the trustee, and attend the confirmation hearing. *Id.*, Doc. No. 14. The court dismissed it again on January 25, 2019 for the same reasons. *Id.*, Doc. No. 32. On April 29, 2019, the court dismissed the case for failure to attend the section 341(a) meeting; file a feasible plan, income and/or budget statement; make all required pre-confirmation payments to the trustee; provide all required documents to the trustee; file tax returns; provide evidence of income; attend the confirmation hearing; and resolve trustee and/or creditor objections. *Id.*, Doc. No. 50. On August 13, 2019, Mr. Eyde asked to voluntarily dismiss his case, advising that Wells Fargo had cancelled a pending sheriff's sale upon his property after the property was included in a state forbearance program. *Id.*, Doc. Nos. 66, 71. The proof of claim filed by Wells Fargo showed that it had obtained a Final Judgment in Foreclosure against Mr. and Mrs. Eyde on March 1, 2018. *See id.*, Claim #5-1, p. 51. Mr. Eyde's attorney certified "Accordingly, there is no more need for Mr. Eyde to utilize the bankruptcy court's resources of chapter 13 protection." *Id.*, Doc. No. 66, p. 2.

But less than two months later, on October 2, 2019, Mr. Eyde filed a Motion to Vacate Dismissal *pro se* stating that his attorney was ill so could no longer represent him; that "[d]ue to the exigency of certain filing requirements necessary to preserve my claim, I now file this Petition Pro Se"; and "I am asking this Honorable Court to institute a stay of all proceedings so as to afford your Petitioner to retain replacement counsel." *Id.*, Doc. No. 78-2. He gave no reason for needing reorganization. *Id.* Indeed, though he styled the motion as one to vacate dismissal, his certification sought "a Stay of All Proceedings or alternatively, a ninety (90) day continuance," *Id.*, Doc. No. 78-2, p. 1.

The trustee objected to the motion on the basis that the case had been pending on and off for over one year, yet Mr. Eyde had "yet to appear at a §341(a) Meeting of Creditors, provide proof of income, provide tax returns, submit plan payments to the Trustee or file a feasible Chapter 13 Plan." *Id.*, Doc. No. 80. The court denied the Motion to Vacate Dismissal at a hearing held October 29, 2019, where it repeatedly instructed Mr. Eyde that any relief due him under his forbearance had to be sought in the state court, and stated that it found no good faith in the filing. The case was closed October 31, 2019. *Id.*, Doc. No. 83.

In the Current Case, on November 29, 2021, Rushmore Loan Management Services, LLC, filed a proof of claim as servicer for U.S. Bank Trust National Association, as Trustee of the LB-Cabana Series IV Trust, asserting that the trust holds a mortgage on the Ocean City property. *See id.*, claim # 7-1. It alleged a total debt of $864,206 and prepetition arrears of $433,122 at a variable interest rate of 2%. *Id.* In its objection to the Motion, Rushmore alleged that it is due prepetition arrears of approximately $433,122, with the last payment received on the note on October 1, 2010.[4] *Id.*, Doc. No. 58. On Schedule D, Mr. Eyde disclosed a claim of $735,213 with the real property valued at $450,000, thus he admits the debt. *Id.*, Doc. No. 1, p. 24.[5]

Documents attached to Rushmore's claim show that on June 6, 2006, Mr. Eyde had executed an interest-only promissory note with Wachovia Mortgage Corporation, and he and his wife had executed a mortgage. *See* Current Case, Claim No. 7-1, pp. 21, 26, 28, 44. On May 5, 2021, Wells Fargo Bank, N.A., as successor by merger to Wachovia, assigned the mortgage to U.S. Bank Trust National Association as trustee for the LB Igloo Series IV Trust. *Id.*, p. 55. It is not known when the mortgage was assigned to the LB-Cabana Series IV Trust, but the note is endorsed in blank, therefore it is payable to bearer. *Id.*, p. 25; *Wilmington Sav. Fund Soc'y, FSB v. Jaye*, A-4262-16T4, 2019 WL 2225297, at *2 (N.J. Super. Ct. App. Div. May 23, 2019) ("A note with an indorsement in blank is payable to the note's bearer[] and is transferred by possession alone.") (citing N.J.S.A. 12A:3-205(b)); *Heriveaux v. Durkin & Durkin LLC*, CV1813148KMMAH, 2020 WL 487290, at *7 (D.N.J. Jan. 30, 2020) (same).

At the hearing held February 8, 2022 on the Motion, Mr. Eyde referred to these endorsements (which he called "seals"), alleging that the original note had been wrongly altered and that the numerous entity names on the page confused him as to who actually holds the note now. But as just stated, since the note is endorsed in blank, it is payable to bearer, now the LB-Cabana Series IV Trust.

More importantly, at the hearing Mr. Eyde admitted that he does owe *somebody* on the mortgage (contrary to his statement at the 341 meeting of Creditors that he did not), that Wells Fargo obtained a judgment in foreclosure against him, that he is currently applying for a loan modification through Rushmore[6] and that he does not need to be in bankruptcy to do that.[7] Though he contended that the foreclosure judgment was in error because it was entered during the state-imposed forbearance period, he admitted that he did not defend the lawsuit on that basis. It was only after the judgment was entered that Mr. Eyde obtained the forensic audit that he believes

---

[4] The court takes judicial notice that Superstorm Sandy occurred in 2012.

[5] But on Schedule A/B, while valuing the property at $450,000, he alleged that the current value of the portion he owns as $735,213. *Id.*, p. 13.

[6] In fact, Mr. Eyde's current loan modification process was started when no bankruptcy case was pending.

[7] When the court asked but what if Rushmore does not have standing, Mr. Eyde replied that he was applying for the modification "in case it does."

shows that Wells Fargo did not have standing in state court to obtain the judgment, but he has not gone back to state court to challenge the judgment. He confirmed that the purpose of this case was to clarify standing, and then to modify the loan or sell his residence. He also confirmed that the state forbearance was still in place.[8]

### IV.    DISCUSSION

Mr. Eyde asks that the court vacate the order dismissing his Current Case because (1) he never was given an amount to pay on his plan; (2) he wishes for the court to hear his Motion for Standing; and (3) he plans on filing an adversary complaint against his "presumed" creditors, "namely Wells Fargo etal [sic], Rushmore etal [sic], and IB Igloo etal [sic]." Current Case, Doc. No. 54, p. 2.[9] At the hearing on the motion, Mr. Eyde emphasized using the case to find out who he is to pay on the mortgage.

The trustee opposes the motion. *Id.*, Doc. No. 57. She cites the debtor's refusal to make plan payments; deficiencies in his schedules, statements and chapter 13 plan; refusal to participate in the section 341 meeting of creditors; and failure to cooperate with the trustee. She alleges that the debtor is using this bankruptcy case to hinder and delay payments to his creditors. At the hearing, she stated that it appeared clear that Mr. Eyde is not interested in a traditional chapter 13 reorganization.

Rushmore also objects. *Id.*, Doc. No. 58. It argues that though the debtor's modified plan proposes to modify the mortgage, "[s]eeking a lo[an] modification within four years is highly speculative and calls for the Debtor's [sic] to be able to provide documents in a timely manner." *Id.*, p. 2, ¶ 5.[10]

---

[8] Indeed, as cited above, Mr. Eyde attached as exhibit A to his Motion to Voluntarily Dismiss his Second 2018 Case the letter from the New Jersey Department of Community Affairs stating that the forbearance had been extended to July 1, 2022. *See also* N.J.S.A. 52:15D-13.

[9] Mr. Eyde also alleges that, because no creditors appeared at his 341(a) hearing on December 23, 2021, that the trustee's office agreed to reschedule the hearing. *Id.* But his specified support for this allegation is a letter from the chapter 13 trustee's office that instead states that because Mr. Eyde had not made any trustee payments and would not answer any questions pertaining to his case, the hearing could not be held, and within 10 days from December 22, 2021, the court would enter an order dismissing his case. *Id.*, Doc. No. 54-4, ex. B, p. 2. Mr. Eyde also attached a letter from the trustee's office dated December 20, 2021 warning of this potential outcome. *Id.*, Doc. No. 54-4, ex. B, p. 3.
   In addition, at the hearing on the Motion, Mr. Eyde conceded that he had no basis in law or fact for requiring creditors to appear at a section 341(a) hearing, and that "he did not know why" he did not disclose any other creditors on his petition.

[10] There is no modified plan on the docket. As stated above, Mr. Eyde stated on Schedule J that he expected a change in his expenses due to modifying his existing mortgage loan. Doc. No. 1, p. 37. In his Motion, he states that Rushmore asked him to submit a loan modification. Doc. No. 54, p. 2. This all conflicts with his stated intention in the plan to sell his real property, just another instance of Mr. Eyde not paying attention to his disclosure duties.

Section 1307(c) of the Bankruptcy Code permits dismissal of a chapter 13 petition for cause. 11 U.S.C. § 1307(c); *In re Lilley,* 91 F.3d 491, 496 (3d Cir. 1996)). A "lack of good faith in filing is sufficient cause for dismissal under section 1307(c)." *In re Lilley,* 91 F.3d at 496. In addition, section 1325(a)(7) of the Bankruptcy Code contains a good faith requirement, stating that in order for a plan to be confirmed the debtor's bankruptcy petition must have been filed in "good faith." 11 U.S.C. § 1325(a)(7); *In re Goddard*, 212 B.R. at 237 (D.N.J. 1997). "Good faith is fact intensive and requires a case-by-case analysis," determined by the totality of the circumstances. *In re Lilley*, at 496. When considering the totality of the circumstances, the court may consider

> a wide range of factors, including, "the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."

*In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (quoting *In re Lilley*, at 496).

Finally, while filing bankruptcy during related state court litigation is not bad faith per se, it can be when "the purpose of the filing is to defeat state court litigation without a reorganization purpose." *Myers*, 125 (internal citation omitted).

Here, Mr. Eyde argued that nobody told him how much to pay into the plan, but it is his responsibility to propose a plan with plan payments, 11 U.S.C. § 1321 ("The debtor shall file a plan."), and regardless, he has stated that he does not intend to pay anything to the trustee, instead filing this case to obtain a declaration that Wells Fargo (and now, its successors) does not have standing to enforce his mortgage.

Moreover, at the hearing, Mr. Eyde conceded that Wells Fargo obtained a Final Judgment in Foreclosure against him and his wife. The *Rooker-Feldman* doctrine prevents this court from overruling the state court's finding that Wells Fargo had a right to foreclose. *Hogg's v. New Jersey*, 352 Fed. Appx. 625, 629 (3d Cir. 2009) ("The *Rooker–Feldman* doctrine divests federal courts of jurisdiction where a federal action "would be the equivalent of an appellate review" of a state court judgment."). In addition, this court granted Wells Fargo's Motion for Relief from the Stay in Mr. Eyde's prior case, implicitly finding that Wells Fargo had standing (the order was entered unopposed). Second 2018 Case, Doc. No. 70. Mr. Eyde did not appeal this court's decision, and the time to do so has well expired. Nor has he attempted to reverse the state court judgment, despite contending that Wells Fargo did not have the right to foreclose. Mr. Eyde also conceded that he owes *someone* on the mortgage.

Mr. Eyde wants to vacate dismissal so that he can file an adversary proceeding naming Rushmore, Wells Fargo and LB-Igloo, too (but not LB-Cabana) to determine standing. But bankruptcy jurisdiction is not only not needed for Mr. Eyde to litigate who his mortgagee is, it is the wrong court: as the court has repeatedly advised Mr. Eyde, this is a state court matter.

That Mr. Eyde has no bankruptcy purpose for filing this case is additionally supported by the fact that he refuses to fulfill his duties as a debtor, including cooperating with the chapter 13 trustee. *See* 11 U.S.C. § 521(a)(3) (requiring cooperation with the trustee). His prior cases in this court show a consistent failure to file required documents, attend section 341 meetings, attend confirmation hearings, and file confirmable plans, even when represented by counsel. Mr. Eyde's chapter 13 plan in this case is essentially blank. Rather than reorganize, he seems to just want to battle his mortgagee. He does not even need the bankruptcy stay to do this as he has the state forbearance. In addition, Mr. Eyde acknowledged that he is in the process of applying for a loan modification—something that was started without a bankruptcy case pending and apparent need for one. Yet meanwhile if the case is reinstated, Mr. Eyde unfairly benefits from staying his other creditors from collecting on prepetition debts.

What is more, Mr. Eyde acknowledges that he owes "somebody" on the mortgage obligation and has admitted to not making payments to whichever creditor that may be. Mr. Eyde repeatedly argues that the proper creditor on the mortgage is Wachovia Bank—a position he reconfirmed at the February 8 hearing. Yet, despite that declaration and knowing he owes money to and has defaulted in making payments to Wachovia Bank, *nowhere* in his current petition, plan, or for that matter, in his previous two cases in 2018, does Mr. Eyde list Wachovia Bank as a creditor or does he take steps to cure his default with it. The only creditor he lists on his petition is Wells Fargo and even then, he lists it as a secured creditor. Wells Fargo has a judgment in foreclosure entered by the state court. It has been explained to Mr. Eyde repeatedly that this court cannot set aside the state court order and that he must seek his relief in state court. To the extent that Mr. Eyde can challenge the state court order as to the standing of Wells Fargo (and its eventual assignee Rushmore Loan Management Services), that is solely a matter to be heard in state court. There certainly is no need for this case to continue for the purpose of a possible loan modification because clearly one was started without the bankruptcy case pending, and counsel to Rushmore Loan Management Services confirmed that a pending bankruptcy case is not needed for it to consider Mr. Eyde's application.

The court does not find Mr. Eyde credible in his explanations or position. Mr. Eyde is using this bankruptcy case to hinder and delay payments to his creditors as evidenced by his refusal to properly account for payment to *any* secured creditor, make plan payments, file deficient schedules, statements and chapter 13 plan, refusal to participate in the section 341 meeting of creditors, and failure to cooperate with the trustee—all warranting a finding of an abuse of the bankruptcy process. In reviewing the factors to determine bad faith laid out by the Third Circuit, this court finds that Mr. Eyde's mortgagee has an un-appealed Final Judgment in Foreclosure; the debtor improperly invoked bankruptcy court jurisdiction for a purpose that is properly brought in state court; that the debtor is wrongly preventing prepetition creditors from collecting on their debts as he did not disclose them or include payment to them under his proposed plan; and the debtor has not been forthcoming with the bankruptcy court.

This abuse of the bankruptcy system must stop. Mr. Eyde's motion to vacate dismissal is denied.

## V. CONCLUSION

Based on the foregoing, the debtor's Motion to Vacate Dismissal is denied.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: February 10, 2022